**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **PIZARRO WILLIS,** | * |
| Plaintiff, | * |
| v. | * Case No.: GJH-19-632 |
| **RAYMOND COSGROVE,** *et al.*,[1] | * |
| Defendants. | * |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Pizarro Willis, who was formerly incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"),[2] brought this civil action pursuant to 42 U.S.C. § 1983 alleging that Defendant Raymond Cosgrove attempted to have him assaulted and retaliated against him for reporting the incident and that Defendants Michael Gillespie and Michael Sample failed to respond to Plaintiff's grievances about Defendant Cosgrove. ECF Nos. 1, 5. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 7, and Plaintiff's Motion to Add New Defendants, ECF No. 10. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment, is granted, and Plaintiff's Motion to Add New Defendants is denied.

---
[1] The Clerk shall amend the docket to reflect the correct names of Defendants Raymond Cosgrove, Michael Gillespie, and Michael Sample.
[2] Plaintiff was released from FCI Cumberland on September 19, 2019. ECF No. 13.

1

## I. BACKGROUND

### A. Factual Background

Plaintiff claims that on or about August 28, 2018, during his morning class at FCI Cumberland, an inmate named Gilmer told him that Defendant Cosgrove, a Federal Bureau of Prisons ("BOP") education specialist, attempted to instigate Gilmer to assault Plaintiff by telling Gilmer that Plaintiff had called Gilmer derogatory names. ECF No. 1 at 4.[3] Gilmer also told Plaintiff that Cosgrove referred to Plaintiff as his "rat." *Id.* at 5. When Plaintiff asked Cosgrove about Gilmer's allegations, Cosgrove told him to return to the classroom. *Id.*

On September 4, 2018, Plaintiff approached Defendant Gillespie, a BOP education supervisor, to complain about Defendant Cosgrove's abuse of authority and unprofessional conduct as a BOP employee. *Id.* at 6. Defendant Gillespie said that he would look into the matter. *Id.*

On September 18, 2018, Plaintiff emailed Defendant Sample, the assistant warden at FCI Cumberland, regarding Defendant Cosgrove's actions. *Id.* On October 4, 2018, Plaintiff sent another email to Defendant Sample informing him that Defendant Cosgrove wanted Plaintiff to be his rat, *i.e.*, to give him information about BOP staff and other inmates. *Id.*

On December 14, 2018, Plaintiff filed his First Request for Administrative Remedy to the BOP's Mid-Atlantic Regional Office, claiming that his complaint regarding Defendant Cosgrove's misconduct involved a sensitive issue. ECF No. 1-2 at 1; ECF No. 7-2 ¶ 7; ECF No. 7-2 at 5, 16. The regional office rejected this submission on January 29, 2019, finding that

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Plaintiff's claim was not a sensitive issue. ECF No. 1-1 at 5; ECF No. 7-2 ¶ 7; ECF No. 7-2 at 16. Plaintiff did not resubmit his Request locally to the warden.[4] ECF No. 7-2 at ¶ 7.

On February 11, 2019, Defendant Cosgrove threatened to take away Plaintiff's GED exemption and called him derogatory names. ECF No. 1 at 6–7. The following day, Defendant Cosgrove told Plaintiff that he "should first think" before filing complaints about him. *Id.* at 7. When Plaintiff asked him what he was referring to, Defendant Cosgrove said, "your BP-9 that was returned to you," presumably referring to the First Request for Administrative Remedy. *Id.*

Plaintiff claims that as of February 12, 2019, he had not received a response from Defendant Gillespie regarding his complaints about Defendant Cosgrove. On March 20, 2019, when Plaintiff approached Defendant Gillespie to ask about the status of the investigation into Defendant Cosgrove, Gillespie said, "if you have not receive[d] anything by now you won't Mr. Willis, you been doing time to[o] long not to know how we work when we have to investigate our own." ECF No. 5 at 2.

Plaintiff filed a Second Request for Administrative Remedy seeking monetary relief on April 16, 2019 with the warden at FCI Cumberland. ECF No. 7-2 ¶ 8; ECF No. 7-2 at 16, 19. Plaintiff claimed that Defendants Gillespie and Sample supported Defendant Cosgrove's unprofessional action and abused their authority, leading to a purported failure to protect Plaintiff

---

[4] The BOP Program Statement provides:

> If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

BOP Program Statement 1330.018, *Administrative Remedy Program*, Section 8(d)(1), available at https://www.bop.gov/policy/progstat/1330_018.pdf (last visited March 4, 2020).

or investigate Plaintiff's grievances. ECF No. 7-2 at 16, 19. That same day, Plaintiff's Second Request for Administrative Remedy was assigned to Gillespie for investigation and he was to prepare a draft response to provide to Defendant Sample by April 25, 2019. ECF No. 7-2 at 22. Defendant Sample responded to Plaintiff on April 26, 2019, informing him that his complaint about staff would be thoroughly reviewed and if it was determined that staff acted inappropriately, the issue would be forwarded to the proper investigative authority. *Id.* at 24. Defendant Sample further advised that Plaintiff would not receive information regarding the outcome of any staff investigation. *Id.*

On May 3, 2019, Plaintiff filed his Third and Fourth Requests for Administrative Remedy with Defendant Sample, complaining that he did not receive a response regarding Defendant Gillespie's investigation of Defendant Cosgrove. ECF No. 7-2 ¶ 9; ECF No. 7-2 at 17, 26, 28. The new warden, J.R. Bell, responded on May 13, 2019, denying the administrative requests as repetitive because Plaintiff had previously filed the Second Request for Administrative Remedy regarding the same concern and Defendant Sample's response had thoroughly addressed it. ECF No. 7-2 at 30, 32. Warden Bell also informed Plaintiff that if he was dissatisfied with the response, he could appeal to the BOP Regional Director for the Mid-Atlantic Region. *Id.* Plaintiff did not appeal Warden Bell's decisions.

### B. Procedural Background

On March 1, 2019, Plaintiff filed a Complaint in this Court. ECF No. 1. He filed a Supplemental Complaint on April 11, 2019. ECF No. 5. On June 3, 2019, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 7. On June 6, 2019, the Court informed Plaintiff of the Motion and his right to file a response, including affidavits,

4

declarations, or other evidence. ECF No. 8. Plaintiff filed responses to the Motion on June 10, 2019 and July 24, 2019. ECF Nos. 9, 12.

On July 1, 2019, Plaintiff filed a Motion to Add New Defendants, requesting to add Mr. Pressman, Officer Buckley, Officer Haglien, Mr. Washington, and Mr. Wagnus, all of whom are BOP employees that Plaintiff alleges were involved in an incident that took place on June 20, 2019. ECF No. 10. According to Plaintiff, Pressman retaliated against him, harassed him, and assaulted him by pulling him through the turnstile in the dining room, and Officer Buckley wrote an incorrect report regarding the incident in order to support Pressman. *Id.* Plaintiff also states that the other three proposed defendants supported their co-workers, but he does not provide any details regarding their alleged actions. *See id.* Defendant filed a response to Plaintiff's Motion on July 10, 2019. ECF No. 11.

## II. MOTION TO ADD NEW DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 dictates that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party[.]" *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)). A proposed amendment is unduly prejudicial if it is belated and would change the nature of the litigation. *Id.* at 604.

5

Here, Plaintiff filed his Complaint on March 1, 2019, and Defendants responded with a dispositive motion on June 3, 2019. ECF Nos. 1, 7. To the extent that Plaintiff is attempting to amend his Complaint to add five defendants, he failed to do so within 21 days of service of Defendants' Motion. To the extent that he seeks joinder under Federal Rule of Civil Procedure 20, his Motion serves to delay the proceedings and prejudice Defendants, who had already filed a response to the initial Complaint. *See CineTel Films, Inc. v. Does 1–1,052*, 853 F. Supp. 2d 545, 554 (D. Md. 2012) (exercising this Court's discretionary authority under Rule 20(b) to sever defendants when joinder is "inefficient, raises significant manageability problems, and is unduly prejudicial to the defendants"). Accordingly, Plaintiff's Motion to Add New Defendants is denied. If Plaintiff wishes to pursue his claims against the proposed additional defendants, he may do so in a separate lawsuit.

### III.   MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

#### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the

court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 286

8

(2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). "To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery could possibly create a genuine issue of material fact sufficient to survive summary judgment or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

Moreover, where, as here, the plaintiff is proceeding *pro se*, the Court reads the pleadings generously. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

### B. Discussion

As an initial matter, the Court will construe Defendants' Motion as a Motion for Summary Judgment because the parties have submitted evidence outside the pleadings and been given reasonable opportunity to present all pertinent material, and Plaintiff had notice, vis-à-vis the title of Defendants' Motion, that Defendants were seeking summary judgment. *See* Fed. R. Civ. P. 12(d).

Defendants seek summary judgment under Federal Rule of Civil Procedure 56. They contend that (1) they are not subject to suit under § 1983; (2) Plaintiff failed to exhaust administrative remedies; (3) the Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA"), prohibits claims of mental pain and suffering; (4) Plaintiff fails to state a claim recognized under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); (5) Plaintiff fails to state

plausible claims of retaliation or Eighth Amendment violations; and (6) Defendants are protected by qualified immunity. ECF No. 7-1.

Section 1983 provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also Filarsky v. Delia*, 566 U.S. 377, 383 (2012). To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Plaintiff brings suit against federal BOP officers acting under color of federal law, rather than state law. As such, Defendants are entitled to summary judgment on Plaintiff's § 1983 claims. *See Chin v. Wilhelm*, 291 F. Supp. 2d 400, 404 (D. Md. 2003) (granting summary judgment to defendants were defendants were federal officers acting under color of federal law).

To the extent Plaintiff intended to bring suit pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), his claim also fails. A *Bivens* action is a judicially-created monetary remedy designed to vindicate violations of constitutional rights committed by federal actors in their individual capacity. *See Hower v. Stewart*, No. GLR–17–198, 2018 WL 4384150, at *7 (D. Md. Sept. 14, 2018) (citing *Bivens*, 403 U.S. at 395–97 (1971)). To state a *Bivens* claim, a plaintiff must allege that "a federal agent acting under color of his [federal] authority" violated his constitutional rights. *Bivens*, 403 U.S. at 389. Thus, a plaintiff must sue the named defendants in their individual, rather than their official, capacities. *See Funches v. Wright*, 804 F.2d 677 (Table), 1986 WL 17980, at *1 (4th Cir. Nov. 6, 1986) (citing *Butz v.*

*Economou*, 438 U.S. 478 (1978)). In a *Bivens* action, the plaintiff may seek money damages against a federal agent acting under the color of their authority for injuries caused by the defendant's unconstitutional conduct but may not seek damages against the United States or a federal agency. *See FDIC v. Meyer*, 510 U.S. 471, 484 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002)).

In response to Plaintiff's potential *Bivens* claim, Defendants raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies. If Plaintiff's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the PLRA, which provides, in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h); *see also Gibbs v. Bureau of Prisons Office*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1856–57 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

An inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

The BOP has established an Administrative Remedy Program ("ARP") for inmates to resolve concerns related to their confinement. *See* 28 C.F.R. § 542.10 *et seq.* Inmates must first attempt informal resolution with staff. *See* 28 C.F.R. § 542.13. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the incident on which the complaint is based. *See* 28 C.F.R. §

542.14(a). If an inmate is not satisfied with the warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response using the appropriate form to the Office of the General Counsel, located in the BOP Central Office in Washington, D.C. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. *See id*. An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels. *See* 28 C.F.R. § 542.15(a).

Here, Plaintiff has not exhausted his administrative remedies for any claims asserted in this action. In September and October of 2018, Plaintiff attempted informal resolution of his concern regarding Defendant Cosgrove by approaching Defendants Gillespie and Sample. He subsequently filed the First Request for Administrative Remedy to the BOP's Mid-Atlantic Regional Office on December 14, 2018, but that submission was rejected because it did not involve a sensitive issue. ECF No. 1-1 at 5. Although the regional office directed Plaintiff to "file a request or appeal at the appropriate level via regular procedures," *id.*, he did not file a request for remedy to the FCI Cumberland warden regarding Defendant Cosgrove's alleged conduct, therefore failing to meet the exhaustion requirements with respect to his claims against Defendant Cosgrove.

On April 16, 2019, Plaintiff filed his Second Request for Administrative Remedy to the warden at FCI Cumberland, claiming that Defendants Gillespie and Sample failed to investigate Plaintiff's grievances against Defendant Cosgrove. *See* ECF No. 7-2 ¶ 8; ECF No. 7-2 at 16, 19. Defendant Sample responded to Plaintiff on April 26, 2019, informing him that his complaint about staff would be thoroughly reviewed and if it was determined that staff had acted

13

inappropriately, the issue would be forwarded to the proper investigative authority. ECF No. 7-2 at 24. On May 3, 2019, Plaintiff also filed his Third and Fourth Requests for Administrative Remedy with Defendant Sample, complaining that he had not received a response regarding the investigation of Defendant Cosgrove. *See* ECF No. 7-2 ¶ 9; ECF No. 7-2 at 17, 26, 28. On May 13, 2019, the new warden, J.R. Bell, denied the requests and informed Plaintiff that if he was dissatisfied with the response, he could appeal to the BOP Regional Director for the Mid-Atlantic Region. ECF No. 7-2 at 30, 32. Plaintiff did not appeal Warden Bell's decisions and therefore did not meet the exhaustion requirements with respect to his claims against Defendants Gillespie and Sample.

Plaintiff did not pursue his grievances through all levels of the BOP's Administrative Remedy Program. He also did not assert that the ARP process was unavailable to him, but simply failed to appeal the ARP denials as required. He has therefore failed to exhaust his administrative remedies, and so Defendants are entitled to summary judgment.[5]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Add New Defendants is denied and Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment, is granted. A separate Order shall issue.

Date: <u>March   5, 2020</u>                                                                 /s/_____
                                                                                              GEORGE J. HAZEL
                                                                                              United States District Judge

---

[5] In light of the Court's ruling, it is not necessary to address Defendants' remaining arguments.